CALEB FOOTE & others *vs.* CITY OF SALEM & others.

A statute for supplying a city with pure water, after authorizing the city to take certain water rights and lands, and to build and maintain aqueducts, dams, reservoirs and other works adapted to the purpose, and providing for the payment of damages caused thereby, and for the appointment of commissioners to execute the work, authorized the city council, " for the purpose of defraying the cost " of whatever was so taken, and of constructing the works, and paying all expenses incident to the accomplishment of said purpose " to issue scrip to an amount not exceeding in the whole five hundred thousand dollars." *Held,* that the city were not thereby restricted in the amount of expenditures which they might make for the accomplishment of said purpose, but only in the amount of permanent debt which they might create.

A statute authorized the city council of a city to issue scrip to a certain amount, bearing interest at a rate not exceeding six per cent. per annum, and provided that the act should be void unless approved by a majority of the voters of the city present and voting, at meetings held on a certain day. The city council issued and sold scrip with principal and interest payable in coin. A subsequent statute authorized the city to contract for the payment in coin of the principal and interest of said scrip, and ratified all acts of the city or any officer thereof having in contemplation the payment thereof in coin, without providing for any new submission of the matter to the voters of the city. *Held,* that the issue of the scrip with principal and interest payable in coin, was legal.

A city which is authorized to issue scrip to a certain amount, for the purpose of defraying the expense of a public work, may lawfully issue the same all at once, and invest the money not required for immediate use upon the work in United States securities.

BILL IN EQUITY by ten tax payers and over of the city of Salem, brought to restrain the city and its officers from proceeding, under *St.* 1864, *c.* 268, entitled " An act for supplying the city of Salem with pure water," in the construction of the works therein authorized, at an expense greater than the sum of $500,000, and also from issuing bonds of the city with principal and interest payable in coin, and appropriating or expending money to purchase coin to pay the principal or interest of said bonds.

The *St.* of 1864, *c.* 268, in §§ 1–11, provided that the city might take certain water rights and lands, and build and maintain aqueducts, dams, reservoirs and other works suitable for the purposes thereof, and distribute and regulate the use of the water and establish rates therefor, enter upon and dig up streets, and lay pipes ; required them to indemnify towns against damages from defects of ways caused thereby ; and provided for the appointment of commissioners to execute the

work; and for the payment for property taken for said purposes. Section 12 was as follows:

" For the purpose of defraying the cost of such franchises, property, lands, water and water rights, as are taken, purchased or held, for the purposes aforesaid, and of constructing the works necessary and proper for the accomplishment of said purposes, and paying all expenses incident thereto, the city council shall have authority to issue scrip, bonds or certificates of debt, to be denominated on the face thereof, ' City of Salem Water Loan,' to an amount not exceeding in the whole, the sum of five hundred thousand dollars, bearing interest at a rate not exceeding six per cent. per annum, said interest to be payable semi-annually, and the principal to be payable at periods not more than fifty years from the time of issuing said scrip, notes, bonds or certificates respectively. Said city council may sell the same, or any part thereof, from time to time, or pledge the same for money borrowed for the purposes aforesaid; but the same shall not be sold or pledged at less than the par value thereof."

The statute further provided that the city might purchase and connect with a certain aqueduct, no provision being made for payment therefor; that the statute should be void unless approved by a majority of the voters of the city present and voting at meetings held on a certain day; and that the city council should cause the capacity of the sources of the water, before mentioned in the statute, to be tested by engineers, and should, fourteen days before the time appointed for the meetings of voters, determine the sources from which the water should be taken, in the event of the acceptance of the statute, and give public notice thereof.

By the *St.* of 1866, *c.* 258, passed May 25th 1866, the city was authorized to contract for the payment in coin of the principal and interest of the scrip, bonds and certificates of debt above referred to; and all acts and doings of the city or any officer thereof, having in contemplation the payment of such principal and interest in coin were confirmed and declared valid to all intents and purposes.

The bill set forth that the city had elected to build the works,

and had appointed commissioners, who were proceeding to take lands and make contracts for labor and materials; that the works undertaken and intended to be built would cost much more than $500,000, and that the estimates upon which the commissioners were proceeding were largely in excess of that sum; that in so doing the city and commissioners were acting without due authority; that on the 22d of January 1866 the city council passed an order authorizing the treasurer of the city to negotiate $10,000 dollars of the loan in accordance with the statute, under which order the treasurer issued proposals to borrow said sum, the principal and interest thereof to be payable in coin; " and your petitioners are informed and believe that said treasurer for said city did receive said sum of ten thousand dollars in currency from sundry persons, and that said treasurer did give his receipts therefor, the precise tenor of which your petitioners cannot now state, but they do state upon information and belief that said treasurer in said receipts did agree in behalf of said city with the several persons who lent said money, that said city would issue to them bonds therefor, payable in fifty or after ten years, at the option of said city, as soon as they could be prepared and printed, the principal and interest of which bonds were to be payable in coin; " that on the 12th of February following the city council passed an ordinance authorizing and directing the treasurer to have bonds prepared to the amount of $500,000, to be denominated on their face " City of Salem Water Loan," payable in fifty years or after ten, at the pleasure of the city, with principal and interest payable in coin, to be kept by the treasurer and pledged or sold from time to time, and on the 23d of April following passed an order authorizing him to negotiate $100,000 thereof, under which order he issued proposals for said sum, with principal and interest payable in coin; that the petitioners " cannot state with certainty what amount of money the said treasurer has received in answer to said proposals, or what receipts he gave, or what agreements he entered into in behalf of said city, but upon information and belief they do represent that said treasurer has received money in currency in answer to said proposals, and has given

receipts or agreements therefor " similar to those above referred to ; that no bonds have been issued under these proposals, but that it is the intention of the city and of the treasurer to issue them, when prepared, for any money received or which may be received; and that under *St.* 1866, *c.* 258, and *St.* 1864, *c.* 268, the city are about to issue the bonds, with principal and interest payable in coin, for a loan in currency.

The bill further set forth that said acts conferred no author‐ ity to issue such bonds payable in coin for loans in currency, and that the city had no coin in the treasury and by taxation could not collect coin, and that to pay the bonds and interest coin must be purchased at a premium, which the city has no right to do.

The bill further set forth that on the 14th of May 1866 the city council passed an order authorizing the treasurer to invest in securities of the United States any moneys not required for immediate use, being the proceeds of the water loan, and to dispose of the same at pleasure, as the interests of the city might require ; and that, upon information and belief, it is the intention of the city to sell or pledge all the bonds, to the amount of $500,000, during the present municipal year, and in‐ vest the proceeds, not wanted for immediate use upon said works, in United States securities; which the city has no right to do.

The defendants filed demurrers.

*J. W. Perry*, (*W. C. Endicott & S. B. Ives, Jr.*, with him,) for the plaintiffs, was first called upon. The city has no authority to construct water works, unless such power is specially given by statute. When such power is given, it must be strictly con‐ strued and exercised as given. All the sections of *St.* 1864, *c.* 268, should be construed together, in order to determine what power was conferred. The legislature never intended that a mere majority of voters should have the right to expend all the taxable property of the city in building an aqueduct; but only to authorize the building of the aqueduct provided the whole expense thereof should not exceed $500,000. They intended to protect the minority against a greater expenditure than that.

*Spaulding* v. *Lowell,* 23 Pick. 75. *Parsons* v. *Goshen,* 11 Pick. 399. The legislature before giving such power inquire into the expediency of the proposed undertaking, and its cost. If the city under this statute can exceed $500,000, there is no limit to their authority.

The city, having no gold on hand, have no authority to purchase it to pay interest or principal on these bonds. Under the original statute, it is clear that no such authority would exist. The *St.* of 1866, *c.* 258, must be construed as part of the former statute. The original statute was required to be submitted to and approved by the voters; and the *St.* of 1866 is void unless it also is submitted to and approved by the voters. The legislature did not intend that such a burden should be imposed upon the property of the city unless a majority of the voters should approve it. After such approval, the act cannot be altered by imposing a heavier burden without a similar approval. *Cobb* v. *Kingman,* 15 Mass. 197. So far as the *St.* of 1866 attempts to make valid a few individual contracts, it is void, because the legislature cannot declare a past illegal contract to be valid.

Besides; the legislature have no right to authorize a city to borrow in currency and pay in gold, when gold is at a premium. The simple effect is, that the bonds may be sold for a less sum than will be required to pay them. A larger sum in currency will have to be paid for the amount required in coin to make the payments. It is a mere cloak for usury.

The proposed investment of the money in United States securities is illegal. That is not among the purposes for which cities and towns may receive and pay money. *Simmons* v. *Hanover,* 23 Pick. 188. *Cooley* v. *Granville,* 10 Cush. 56. *Pope* v. *Halifax,* 12 Cush. 410. Such payments are not merely financial arrangements. Towns cannot become brokers and speculators in stocks and bonds, upon the credit and at the expense of their citizens.

*S. Bartlett, (J. C. Perkins & J. A. Gillis* with him,) **for the defendants.**

BIGELOW, C. J.   In the absence of any clear and explicit limitation, either express or implied, on the right of the city to expend money in the construction of works necessary to procure an adequate supply of water for the inhabitants, it must be held that the legislature intended to authorize an expenditure sufficient in amount to carry into effect the power granted in a reasonable and proper manner.   This conclusion is the necessary result of the rule of interpretation, that the grant of a general power or authority carries with it the right to do everything that is necessary or fairly incidental to the due execution of the trust delegated.

A careful analysis of the provisions of the act of the legislature, *St.* 1864, *c.* 268, under which the defendants have acted and are proceeding to act in relation to the matters set forth in the bill, fails to satisfy us that there was any intention on the part of the legislature to restrict the city to any fixed and definite sum in their expenditures for the construction of the works which the act authorizes them to build.   There is no such restriction in express terms.   This is conceded by the plaintiffs. Nor can we see that there is any by necessary implication. The only ground on which it is contended that the amount of expenditure is limited to a fixed sum is, that by § 12 of the act the city is authorized to issue scrip or bonds to " an amount not exceeding in the whole the sum of five hundred thousand dollars," for the purpose of obtaining a loan to defray the cost which may be incurred in executing the powers conferred by the statute.   But it seems to us that the inference sought to be drawn from this provision is not reasonable or legitimate.   It is a restriction on the authority of the city to create a permanent debt, payable at a distant period of time, for the purposes enumerated, but not a limitation on their powers to raise money by taxation or temporary loans, in order to carry forward and execute the works which, by the previous provisions of the act, they were in the broadest terms empowered to construct.   This interpretation gives full effect and operation to the language in which the twelfth section is expressed, while it avoids a conclusion, otherwise inevitable, which might defeat the whole

scope and purpose of the act. If construed as an absolute condition or limitation on the authority of the city, no steps could be safely taken to execute the authority conferred, unless it had been previously ascertained that the expenditure to be incurred would not exceed the prescribed sum. But it is obvious that this would be clearly impracticable in relation to an enterprise of the character contemplated by the statute. As applied to the subject matter, such a construction would be manifestly unreasonable. Upon these grounds, we think that the claims of the petitioners to relief founded on an alleged limitation on the authority of the city to expend a greater sum than five hundred thousand dollars cannot be supported.

Equally untenable is the position that the city have exceeded their authority in issuing bonds payable in coin, as is alleged in the bill. Whatever doubt may have existed as to such right under the terms of the original act, full power to enter into contracts for payment in gold is conferred on the city by *St.* 1866, *c.* 258. It was clearly competent for the legislature to grant such power, and to give validity to contracts into which the city had entered without the requisite legislative authority. No legal or constitutional right, either public or private, was violated by such enactment.

Nor do the allegations in the bill set forth any illegal or erroneous action by the city under the provisions of the act. The facts stated do not warrant any inference that money has been borrowed at usurious rates, or that any improper or unlawful use has been made of the bonds or of funds belonging to the city.                              *Bill dismissed,*